IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOHN-PIERRE BANEY, | § | |
| Plaintiff, | § § § | |
| v. | § § | Civil Action No. 3:06-CV-2064-L (BH) |
| MICHAEL MUKASEY, | § § § | |
| Defendant. | § | Pretrial Management |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS

Pursuant to the District Court's *Standing Order of Reference*, filed January 22, 2007, this case was referred to this Court for pretrial management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations to the District Court on dispositive motions. Before the Court are the following:

(1) *Defendant's Motion for Summary Judgment* ("Mot."), filed May 2, 2008;

(2) *Appendix to Defendant's Motion for Summary Judgment* ("App."), filed May 2, 2008;

(3) Plaintiff's *Motion to Deny Defendant's Motion for Summary Judgement* (sic), filed June 5, 2008; and

(4) *Defendant's Reply to Plaintiff's Motion to Deny Defendant's Motion for Summary Judgment*, filed June 6, 2008.

Having reviewed the pertinent filings above and the law applicable to the issues raised, the Court recommends that Defendant's *Motion for Summary Judgment* be **GRANTED** and Plaintiff's *Motion to Deny* be **DENIED**.

# I. BACKGROUND

**A.** <u>Factual</u>

John-Pierre Baney ("Plaintiff") is currently, and has been at all times relevant to his complaint, employed as a Cook Supervisor at the Federal Correctional Institution in Seagoville, Texas ("FCI Seagoville"). On September 17, 2001, Plaintiff, a Coast Guard reservist, was called up for active duty following the events of September 11, 2001. *Complaint*, *Baney v. Gonzales*, 3:06-CV-2064-L, at 3 (N.D. Tex. filed Nov. 8, 2006) (hereinafter, "Compl."); (App. Ex. 2, at 104). Plaintiff remained on active duty with the Coast Guard and stationed in Galveston, Texas, until early October 2002. (App. Ex. 1, at 14).

On or about December 22, 2001, Plaintiff received a Notification of Personnel Action from the FCI Seagoville personnel department informing him that as of September 17, 2001, he was in Leave Without Pay ("LWOP") status. (App. Ex. 3, at 105). The notification further informed Plaintiff that his health benefits coverage would continue for 18 months unless he elected to terminate coverage, and that his life insurance coverage would continue until his non-pay status totaled 12 months. *Id.* On September 16, 2002, Plaintiff received a Notification of Personnel Action informing him that his life insurance was cancelled because he had been in non-pay status in excess of 365 days. (App. Ex. 5, at 155). During this time period, FCI Seagoville employed three other people who were on military LWOP status; none of their life insurance policies were cancelled because none of them were in non-pay status for 365 days. (App. Ex. 4, at 124, 144).

On December 8, 2002, Plaintiff submitted a Health Benefits Election Form to his agency requesting to stop his enrollment in Blue Cross/Blue Shield HMO and to enroll instead in Blue Cross/Blue Shield PPO. (App. Ex. 6, at 156). Plaintiff was covered by Blue Cross/Blue Shield

HMO until January 12, 2003, and by Blue Cross/Blue Shield PPO thereafter; the date of the change in coverage corresponded to the projected effective date of Plaintiff's request. (*See id*.; App. Ex. 8, at 195).

**B.** **<u>Procedural</u>**

On February 18, 2003, Plaintiff filed a formal Equal Employment Opportunity ("EEO") complaint with the Federal Bureau of Prisons ("BOP"). (Compl. at 3). Plaintiff alleged that he was discriminated against on the basis of his race (Caucasian)[1] when: (1) he was accused of falsifying government documents on or about October 1, 2002; (2) he was placed on AWOL status on or about November 2, 2002; (3) his medical, dental, and life insurance benefits were stopped or removed in December 2002 and January 2003; (4) his annual leave was taken back on October 2, 2002, and his sick leave was stopped on November 1, 2001; and (5) his seniority in his work schedule was removed. *Id*. On April 9, 2003, an EEO Officer for the BOP submitted a letter to Plaintiff requesting clarification of the issues raised in his EEO complaint. (App. Ex. 9, at 196). Plaintiff responded in writing on May 14, 2003, wherein he reiterated the five aforementioned bases for alleged discrimination. (App. Ex. 10, at 198).

On November 8, 2006, Plaintiff filed the instant action *pro se*. His complaint states in part, "Criminal and Civil Rights Violation" and attaches the EEOC's August 9, 2006 decision affirming the agency's dismissal of his EEO complaint. Plaintiff also alleges discrimination and retaliation because of his military status and cites the Uniformed Services Employment and Reemployment Rights Act ("USERRA"). On November 20, 2006, Plaintiff filed an amended complaint adding "No FEAR Act (anti-discrimination and retaliation)" and "Whistleblower Act" to the causes of action

---

[1]The EEOC appeal identifies Plaintiff's race as African-American. (Compl. at 3).

asserted in his initial complaint. *Amended Complaint*, *Baney v. Gonzales*, 3:06-CV-2064-L, at 2 (N.D. Tex. filed Nov. 20, 2006) (hereinafter, "Amend. Compl.").

On June 27, 2007, the District Court accepted a recommendation to dismiss Plaintiff's USERRA claims pursuant to Rule 12(b)(1) and to dismiss Plaintiff's Title VII claims against all defendants except Attorney General Alberto Gonzalez pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Baney v. Gonzales*, 2007 WL 1944462, at *8 (N.D. Tex. June 27, 2007). On March 14, 2008, the District Court accepted a recommendation to dismiss Plaintiff's No FEAR Act claim pursuant to Rule 12(b)(6) and to grant summary judgment in favor of Defendant Michael Mukasey ("Defendant") on Plaintiff's Title VII claims related to the falsification of government documents, AWOL status, annual and sick leave, and seniority in work schedule (claims 1, 2, 4, and 5). *Baney v. Mukasey*, 2008 WL 706917, at *13 (N.D. Tex. Mar. 14, 2008).

Remaining for determination are Plaintiff's Whistleblower Protection Act ("WPA") claim and his Title VII claim regarding the suspension of his medical, dental, and life insurance benefits (claim 3). Defendant filed the instant motion for summary judgment on May 2, 2008; Plaintiff did not file a response.[2] The motion is now ripe for determination.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists

---

[2]Plaintiff's response was due on May 22, 2008. *See Order*, issued May 5, 2008 (docket #75). To the extent that Plaintiff's *Motion to Deny Defendant's Motion for Summary Judgement* (sic), filed June 5, 2008, constitutes a response to the instant motion for summary judgment, it is untimely. Nevertheless, the Court also considers the motion.

"if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id*. The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The pleadings, discovery and disclosure materials on file, and affidavits, if any, must demonstrate that no genuine issue of material fact exists. Fed. R. Civ. P. 56(c).

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. To carry this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-movant must show that the evidence is sufficient to support a resolution of the factual issue in his favor. *Anderson*, 477 U.S. at 249.

While all of the evidence must be viewed in a light most favorable to the motion's opponent, *id*. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the non-movant's summary judgment burden, *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). Summary judgment in favor of the movant is proper if, after adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to his case and as to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

Generally, the courts liberally construe the pleadings of a *pro se* plaintiff. *See*, *e.g.*, *Haines*

*v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam); *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981); *Martin v. United States Post Office*, 752 F. Supp. 213, 218 (N.D. Tex. 1990). However, the courts have no obligation under Fed. R. Civ. P. 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment." *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 164 (5th Cir. 2006) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)). Instead, a party opposing summary judgment must "identify specific evidence in the record" that supports the challenged claims and "articulate the precise manner in which that evidence supports [a challenged] claim." *Ragas*, 136 F.3d at 458 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)).

Where, as here, the nonmovant fails to respond to the motion for summary judgment, such failure does not allow the court to enter a default summary judgment. *Hibernia Nat'l Bank v. Admin. Cent. Sociedad Anonima*, 776 F.2d 1277 (5th Cir. 1985) (citing *John v. La. (Bd. of Trs. for State Colls. & Univs.)*, 757 F.2d 698, 709 (5th Cir. 1985)). However, "[a] summary judgment nonmovant who does not respond to the motion is relegated to [his] unsworn pleadings, which do not constitute summary judgment evidence." *Bookman v. Shubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (citing *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 (5th Cir. 1991)). In addition, the movant's evidence may be accepted as undisputed. *Thompson v. Eason*, 258 F. Supp. 2d 508, 515 (N.D. Tex. 2003) (citing *Eversly v. Mbank*, 843 F.2d 172, 174 (5th Cir. 1988); *Bookman*, 945 F. Supp. at 1002).

### III. ANALYSIS

**A.     <u>Whistleblower Protection Act Claim</u>**

Defendant first moves for summary judgment on Plaintiff's WPA claim on grounds that

Plaintiff failed to exhaust his administrative remedies and that he cannot establish a *prima facie* case of whistleblower retaliation. (Mot. at 5-6).

The WPA prohibits governmental agencies from taking adverse personnel actions against employees or applicants for employment because the employee or applicant disclosed information reasonably believed to evidence a violation of the law or a gross mismanagement of funds. 5 U.S.C. § 2302(b)(8). An aggrieved employee or applicant may seek corrective action from the Merit Systems Protection Board ("MSPB") as provided for in the Civil Service Reform Act ("CSRA"). 5 U.S.C. § 1221(a). The MSPB shall order corrective action if the employee or applicant has demonstrated that the disclosure was a contributing factor in the personnel decision with evidence that "the official taking the personnel action knew of the disclosure" and "the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action." 5 U.S.C. § 1221(e). An employee or applicant adversely affected may appeal the decision of the MSPB; only after the MSPB has issued a final order or decision may the applicant or employee obtain judicial review. 5 U.S.C. § 1221(h). Judicial review is ordinarily limited to the Court of Appeals for the Federal Circuit, 5 U.S.C. § 7703(b)(1), but a district court may hear a WPA claim if it was first raised before the Agency as a "mixed case." *Fleeger v. Principi*, 221 Fed. Appx. 111, 115-16 (3d Cir. 2007); *see* 5 U.S.C. § 7703(b)(2). A mixed case complaint is "a complaint of employment discrimination filed with a federal agency based on race, color, religion, sex, national origin, age or handicap related to or stemming from an action that can be appealed to the Merit Systems Protection Board." 29 C.F.R. § 1614.302(a)(1); *see also* 5 U.S.C. § 7702(a)(1)(B).

In support of his contention that Plaintiff failed to exhaust his administrative remedies on the

WPA claim, Defendant notes Plaintiff's EEO complaint raises only racial discrimination claims. (Mot. at 5-6); (*see also* Compl. at 3). There is no mention of a WPA claim. (*See* Compl. at 2-5). Defendant also notes that when an EEO officer for the BOP requested clarification of the issues raised in the EEO complaint, Plaintiff responded by reiterating his allegations of racial discrimination; he did not mention anything about whistleblower retaliation. (App. Ex. 9, at 196; Ex. 10, at 198). Additionally, when explicitly asked under oath whether he filed a WPA claim in conjunction with his Title VII EEO claim, Plaintiff responded, "no." (App. Ex. 11, at 209). Based on the evidence cited by Defendant, the Court finds that Defendant met his initial burden to show that there is no genuine issue of material fact on the issue of exhaustion. *Celotex*, 477 U.S. at 323.

The burden now shifts to Plaintiff to direct the Court's attention to evidence in the record sufficient to establish that a genuine issue of material fact exists for trial. *Celotex*, 477 U.S. at 324. Plaintiff did not respond to Defendant's motion for summary judgment and is therefore relegated to his unsworn pleadings, which do not constitute summary judgment evidence. *Bookman*, 945 F. Supp. at 1002. The only mention of a WPA claim is in Plaintiff's amended complaint, wherein he states "Whistleblower Act" for the first time. (Amend. Compl. at 2). Not only is this brief allegation not summary judgment evidence, it also fails to show that Plaintiff raised the WPA claim either alone or as part of a mixed case before the MSPB. Since the MSPB never considered Plaintiff's WPA claim and never issued a final order or decision, there is no genuine issue of material fact that Plaintiff failed to exhaust his administrative remedies. *See* 5 U.S.C. § 1221(h). Accordingly, summary judgment should be granted in favor of Defendant on Plaintiff's WPA claim.[3]

---

[3]Because the Court finds that Plaintiff failed to exhaust his administrative remedies, it need not consider the second basis for Defendant's motion, that Plaintiff failed to establish a *prima facie* case for a WPA claim. (Mot. at 6-7). The Court notes, however, that Plaintiff failed to present any evidence that: (1) he disclosed any information reasonably believed to evidence a violation of the law or a gross mismanagement of funds; (2) he suffered an

*Celotex*, 477 U.S. at 322-23.

**B.      Title VII Claim**

Defendant next moves for summary judgment on Plaintiff's remaining Title VII claim, that his medical, dental, and life insurance benefits were unlawfully suspended on the basis of his race (claim 3). Defendant contends that Plaintiff cannot establish a *prima facie* case and that the BOP has legitimate, non-discriminatory reasons for its actions. (Mot. at 7).

    **1.      Title VII Framework**

Claims for racial discrimination in the employment context are analyzed under Title VII's well-established burden-shifting paradigm. "First, the plaintiff must establish by a preponderance of the evidence a *prima facie* case of discrimination." *Nichols v. Lewis Grocer*, 138 F.3d 563, 566 (5th Cir. 1998). A plaintiff may establish a *prima facie* case of racial discrimination through either direct evidence, statistical proof, or the test established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Urbano v. Continental Airlines, Inc.*, 138 F.3d 204, 206 (5th Cir. 1998). Under the framework set forth in *McDonnell Douglas*, a plaintiff must show that he (1) belongs to a protected group; (2) was qualified for his position; (3) suffered an adverse employment action; and (4) was replaced by or was treated less favorably than a similarly qualified individual outside the protected class. *See McDonnell Douglas*, 411 U.S. at 802. A defendant can meet its summary judgment obligation by pointing the court to the absence of evidence to support a required element of a plaintiff's case. *See Keeley v. Cisco Sys.*, 2003 WL 21919771, at *3 (N.D. Tex. Aug. 8, 2003) (Fitzwater, J.) (noting that although the defendant did not explicitly argue that plaintiff had failed to establish a *prima facie* case, the defendant had satisfied its summary judgment

---

adverse employment action; and (3) any such disclosure was a contributing factor in the adverse employment action. *See* 5 U.S.C. § 1221(e).

burden by pointing to the absence of evidence to support one prong of the *prima facie* case) (citing *Celotex Corp.*, 477 U.S. at 325). This is because the defendant will not have the burden at trial concerning the elements of the plaintiff's *prima facie* case. *Id*.

If, however, the plaintiff establishes a *prima facie* case, an "inference of intentional discrimination" arises. *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 448 (5th Cir. 1996). The burden of production then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the challenged employment action. *Okoye v. Univ. of Texas Houston Health Science Ctr.*, 245 F.3d 507, 512 (5th Cir. 2001) (citing *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 142 (2000)). Once the defendant has met its burden of production and responded with a legitimate, non-discriminatory reason for the employment action,

> the plaintiff must then offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive[s] alternative).

*Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 341 (5th Cir. 2005) (citing *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)). Under the pretext alternative, the plaintiff must introduce "some evidence, whether circumstantial or direct, that permits the jury to believe that the reason was false and that illegal discrimination was the actual reason." *Nichols*, 138 F.3d at 566. Under the mixed-motive alternative, a plaintiff need only present sufficient evidence for a reasonable jury to conclude that the protected characteristic was a motivating factor for the employment practice; direct evidence is not needed. *Desert Palace*, 539 U.S. at 101. However, "[t]he question of pretext versus mixed-motive treatment is only reached after a plaintiff has met his *prima facie* showing under the modified *McDonnell Douglas* standard and the defendant has

responded with a legitimate nondiscriminatory reason." *Keelan*, 407 F.3d at 341.

## 2. *Prima Facie* Case

Defendant first contends that Plaintiff cannot establish a *prima facie* case of employment discrimination for the suspension of his medical, dental, and life insurance benefits. With respect to Plaintiff's medical and dental insurance benefits, Defendant contends that Plaintiff cannot establish the third element of a *prima facie* case, an adverse action, because these benefits never stopped. (Mot. at 8). In support of this argument, Defendant cites to Plaintiff's December 8, 2002 request to stop his enrollment in Blue Cross/Blue Shield HMO and to enroll instead in Blue Cross/Blue Shield PPO. (App. Ex. 6, at 156). Defendant further notes that Plaintiff was covered by Blue Cross/Blue Shield HMO until January 12, 2003, and that he was covered by Blue Cross/Blue Shield PPO thereafter. (App. Ex. 8, at 195; *see also* App. Ex. 4, at 137 (human resource specialist testifying that Plaintiff's health insurance coverage was never terminated because he was gone for less than 18 months)). Assuming that the termination of Plaintiff's life insurance was an adverse employment action, Defendant contends that Plaintiff cannot establish the fourth element of a *prima facie* case. (Mot. at 9). Defendant notes that Plaintiff failed to identify any similarly situated employees outside the protected class who were treated more favorably with respect to their life insurance benefits. *See id*. Although three other employees of FCI Seagoville of the same and different race as Plaintiff were on military LWOP after the events of September 11, 2001, these individuals were not similarly situated because the duration of their LWOP status was less than one year, whereas Plaintiff was on LWOP for more than a year. (App. Ex. 4, at 144).

Defendant met his summary judgment obligation by pointing the Court to the absence of evidence to support the third and fourth elements of Plaintiff's *prima facie* case. *See Keeley*, 2003

WL 21919771, at *3. The burden now shifts to Plaintiff to direct the Court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. Plaintiff did not respond to Defendant's motion for summary judgment and is therefore relegated to his unsworn pleadings, which do not constitute summary judgment evidence. *Bookman*, 945 F. Supp. at 1002. Plaintiff's conclusory allegations and unsubstantiated assertions that he suffered employment discrimination due to the suspension of his medical, dental, and life insurance benefits are insufficient to satisfy his summary judgment burden. *Little*, 37 F.3d at 1075. Moreover, the undisputed evidence shows that his medical and dental insurance coverage never ceased and that he was not treated differently from similarly situated individuals with respect to his life insurance. Because Plaintiff failed to establish a *prima facie* case of employment discrimination, a burden which he would bear at trial, summary judgment should be granted in favor of Defendant on this claim. *Celotex*, 477 U.S. at 322-23.

### 3. Legitimate Non-Discriminatory Reason & Pretext

In addition to summary judgment being proper for Plaintiff's failure to establish a *prima facie* case, summary judgment is also proper on Defendant's proffer of legitimate, non-discriminatory reasons for the employment actions. The only action taken with respect to Plaintiff's medical and dental insurance was to change the benefit plan from an HMO to a PPO at Plaintiff's request. (App. Ex. 6, at 156). Plaintiff never went without medical or dental insurance coverage. (App. Ex. 4, at 137, 143; Ex. 8, at 195). As for Plaintiff's life insurance coverage, Office of Personnel Management regulations require cancellation of life insurance coverage for any employee who is in non-pay status in excess of 365 days. (App. Ex. 4, at 139). Plaintiff's life insurance was cancelled after he had been in non-pay status for 365 consecutive days and without regard to his

race. (*Id*. at 142, 144). The life insurance policies of the three other FCI Seagoville employees in LWOP status remained in force because they were in non-pay status for less than 365 days. (*Id*. at 144). Moreover, when Plaintiff returned to duty at FCI Seagoville on January 6, 2003, his life insurance was reinstated. (*Id*. at 143). Based on these reasons, Defendant met his burden of production to articulate a legitimate, non-discriminatory reason for the challenged employment action. *Okoye*, 245 F.3d at 512.

The burden now shifts to Plaintiff to identify sufficient evidence to create a genuine issue of material fact either that Defendant's reason is untrue and a pretext for discrimination or that while true, Plaintiff's race is a motivating factor. *See Keelan*, 407 F.3d at 341. Plaintiff did not respond to Defendant's motion for summary judgment and therefore failed to present any evidence of either a pretext or a mixed-motive for the alleged employment discrimination. Accordingly, summary judgment is also appropriate for this reason.

## IV. PLAINTIFF'S MOTION TO DENY

On June 5, 2008, Plaintiff filed a *Motion to Deny Defendant's Motion for Summary Judgement* (sic). The relief sought by Plaintiff is apparent only from the title of his motion; the text of the motion informs the Court of his other legal activities and reiterates the factual basis for the instant lawsuit, including facts for claims previously dismissed by the District Court. Based on this Court's recommendation for summary judgment in favor of Defendant on all remaining claims, Plaintiff's motion should be **DENIED** as **moot**.

## V. CONCLUSION

For the reasons stated above, the Court recommends that Defendant's *Motion for Summary Judgment* be **GRANTED** and that Plaintiff's *Motion to Deny* be **DENIED** as **moot**.

**SO RECOMMENDED** on this 11th day of June, 2008.

                                              **IRMA CARRILLO RAMIREZ**
                                            **UNITED STATES MAGISTRATE JUDGE**

## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

       Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten (10) days after being served with a copy. A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. A party's failure to file such written objections to these proposed findings, conclusions and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985)*; Perales v. Casillas*, 950 F.2d 1066, 1070 (5th Cir. 1992). Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation within ten (10) days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

                                              **IRMA CARRILLO RAMIREZ**
                                            **UNITED STATES MAGISTRATE JUDGE**